IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GORDON LIPPE

    v.                       Civil Action No. DKC 12-0260

TJML, LLC, et al.

**MEMORANDUM OPINION**

Plaintiff Gordon Lippe brought claims under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), the Maryland Wage Payment and Collection Act ("MWPCL"), and the Employee Retirement Income Security Act ("ERISA") against Defendants TMJL, LLC, t/a Tony & James Restaurant and Bar ("Tony and James"); Tony Massenburg, one of the owners of Tony & James; TJML, LLC Group Health Plan ("Group Health Plan"); and Journeyman, LLC, t/a 44 Sports Bar & Grill ("Journeyman"), seeking to recover unpaid wages and bonuses. (ECF No. 1). In a Memorandum Opinion and Order issued on January 16, 2013, judgment was entered in Plaintiff's favor against Defendants Massenburg, Tony & James, and Journeyman on a number of claims. (ECF Nos. 14 & 15). On February 4, 2013, Plaintiff filed a status report stipulating to the dismissal of any unresolved causes of action and requesting the court to enter final judgment. (ECF No. 16). Plaintiff also requested that the

court award him attorneys' fees, costs, and post-judgment interest. On February 15, 2013, Plaintiff's remaining claims were dismissed and judgment was entered in Plaintiff's favor for costs. (ECF No. 17). On March 1, 2013, Plaintiff provided a more detailed schedule of the amounts of attorneys' fees and costs sought, as contemplated by Local Rule 109 and Appendix B to the Local Rules. (ECF No. 18). Defendant Massenburg did not respond to Plaintiff's filings. On March 15, 2013, Defendant Massenburg filed a suggestion of bankruptcy, noting that he filed for relief under Title 11 of the United States Bankruptcy Code on September 18, 2012. (ECF No. 19).

This sequence of events raised a number of concerns regarding the automatic stay provision of the U.S. Bankruptcy Code, which prohibits all acts to collect a pre-petition debt. 11 U.S.C. § 362(a)(6) provides that "a petition . . . operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." Consequently, the judgments in the January 16, 2013 and February 15, 2013 Orders are void as to Massenburg and a new judgment will be issued.

Following the revelation that Plaintiff continued to litigate this case after Massenburg filed a suggestion of

bankruptcy, the court ordered Plaintiff to show cause why he should not be sanctioned. (ECF No. 21).

In their response to the court's show cause order, Plaintiff's counsel admitted that they knew of the September 18, 2012 bankruptcy filing while they were proceeding forward with their action against Defendant Massenburg. (ECF No. 22 ¶ 6). It was Plaintiff's counsel's custom and understanding that it is the Debtor's responsibility to file a suggestion of bankruptcy in all courts with pending cases against the Debtor as soon as the bankruptcy is filed, which counsel believed had been done in this case. (*Id.* ¶ 2). Plaintiff's counsel contends that their communications with this court requesting attorneys' fees, costs, and post-judgment interest were "only clarifying a judgment already granted on the record by defining a debt in dollar amount as had not previously occurred." (*Id.* ¶ 5). Plaintiff's counsel represents that "[n]o action of any kind was taken or intended against the Debtor or his estate once the amount due was established by this Court." (*Id.* ¶ 10).

A creditor will not be sanctioned unless its violation of the automatic stay is willful. 11 U.S.C. § 362(k)(1). In this context, the United States Court of Appeals for the Fourth Circuit discussed the elements of willfulness: "[t]o constitute a willful act, the creditor need not act with specific intent

but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995). "Bankruptcy law forbids creditors from continuing judicial proceedings against bankrupts, and, accordingly, it is the creditor's obligation to inform other courts of the situation." *In re Soares*, 107 F.3d 969, 978 (1st Cir. 1997) (internal citation omitted). Seeking the entry of judgment after the filing of a bankruptcy petition when a party was aware of the debtor's bankruptcy petition – let alone failing subsequently to seek vacatur of that judgment – constitutes a willful violation. While Massenburg has not sought sanctions, the award of attorneys' fees for the time period after the bankruptcy will be reduced.

In their motion for award of attorney's fees, Plaintiff's counsel requests $39,745. (ECF No. 18). In any action under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The payment of attorneys' fees and costs to employees who prevail on FLSA claims is mandatory. "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short,* 730 F.2d 136,

141 (4th Cir. 1984). The MWHL and MWPCL also allow for the recovery of attorneys' fees and costs. *See* Md.Code Ann., Lab. & Empl. § 3-427 ("If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs."); *id* § 3-507.2 (If "a court finds than an employer withheld the wage of an employee in violation of this title . . . the court may award the employee . . . reasonable counsel fees and other costs.").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) - an approach commonly known as the "lodestar" method, *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008).[1] In deciding what constitutes a "reasonable" number of hours and a "reasonable" rate, numerous factors may prove pertinent, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations

---

[1] Maryland courts also use the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *See, e.g.*, *Friolo v. Frankel*, 373 Md. 501, 504-05 (2003).

imposed by the client or circumstances; (8) the amount
in controversy and the results obtained; (9) the
experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards
in similar cases.

*Robinson v. Equifax Info. Servs.,* 560 F.3d 235, 243–44 (4th Cir.

2009) (quoting *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n.28

(4th Cir. 1978)).[2] "[T]he burden rests with the fee applicant to

establish the reasonableness of a requested rate." *Id.* at 244

(*quoting Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)).

"In addition to the attorney's own affidavits, the fee applicant

must produce satisfactory specific evidence of the prevailing

---

[2] The United States Supreme Court recently appeared to
question the approach adopted by the Fourth Circuit in
*Kimbrell's* — originally set out in *Johnson v. Georgia Highway
Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) - describing it as an
"alternative" to the lodestar method and explaining that it
provides too little guidance for district courts and places too
great of an emphasis on subjective considerations. *See Perdue v.
Kenny A.,* 559 U.S. 542, 551-52 (2010) ("[T]he lodestar method is
readily administrable, and unlike the *Johnson* approach, the
lodestar calculation is 'objective,' and thus cabins the
discretion of trial judges, permits meaningful judicial review,
and produces reasonably predictable results." (internal
citations omitted)). Nonetheless, "the *Johnson* factors, as
opposed to the *Johnson* method, are still relevant in informing
the court's determination of a reasonable fee and a reasonable
hourly rate"; "[*Perdue*] cautions against using a strict *Johnson*
approach as the primary basis for determining reasonable
attorneys' fees, but nowhere calls into question the idea of
using relevant *Johnson* factors in helping to come to a
reasonable fee." *Spencer v. Cent. Servs., LLC,* No. CCB-10-3469,
2012 WL 142978, at *5-6 (D.Md. Jan. 13, 2012) (internal
quotations marks and citations omitted).

market rates in the relevant community for the type of work for which he seeks an award," including, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 244, 245 (internal quotation marks and citations omitted). Finally, "where the plaintiff has failed to prevail on a claim that is distinct in all respects from [the] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440.

Plaintiff's counsel are Timothy W. Romberger and Sharon M. Donahue, both of whom have been practicing law for over fifteen years. In support of their request for attorneys' fees in the amount of $39,745, Romberger and Donahue each submitted declarations, both of which attest to the number of hours spent on this litigation by themselves and their paralegal. (ECF Nos. 18-2 & 18-3). Plaintiffs' counsel represent that they expended a total of 136.8 hours on this case, including 129.8 hours by Plaintiff's counsel, and 7.0 hours by their paralegal. (ECF No. 18-1, at 8). Counsel substantiate these averments with detailed time records with notations as to which attorney or paralegal performed each task. (ECF No. 18-1). A review of these time records does not reflect any overly redundant, excessive, or

unnecessary work and they will be accepted by the court, with one exception: the December 14, 2011 entry for "Review health insurance information provided by client; research ERISA Form 5500 re: United Healthcare [performed by attorney]" for 2.1 hours. (ECF No. 18-1, at 1). This work is readily identifiable as being solely devoted to the unsuccessful ERISA claim and, consequently, the number of attorney hours will be reduced to 127.7.

With respect to hourly rates, counsel propose $300.00 per hour for the attorneys and $115.00 per hour for the paralegal. While these proposed rates are within the ranges set forth in Appendix B to the local rules for paralegals and attorneys with more than fifteen years of experience, counsel have not submitted any evidence other than their own declarations that these rates are within the prevailing rates in the community. Instead, they cite to a recent decision in another case in which the $300 per hour rate was approved. A review of that case, however, shows that only counsel declarations were provided there as well. Given the procedural posture of this case, the court will accept the rate proposal inasmuch as it is lower than counsel's normal fee and at the lower end of the guideline range in our local rules. In the future, however, counsel would be

well advised to support their fee requests with additional evidence of the prevailing market rates.

As discussed above, because counsel willfully violated the automatic stay as to Defendant Massenburg when he filed for bankruptcy on September 15, 2012, the fees requested for subsequent work will be reduced. The court will grant, in its entirety, Plaintiff's counsel's request for those fees incurred before the automatic stay was entered on September 18, 2012, which comes to 122 hours in attorney time and 1.5 hours in paralegal time. Multiplied by the hourly rates equals $36,772.50. Once the stay was entered, however, all activity as to Massenburg should have stopped and the court should have been informed. Separating out what work was done as to Massenburg as opposed to the other Defendants would be difficult, if not impossible, given their interconnectedness. For lack of a more precise solution, the court will reduce the award of attorney's fees for post-bankruptcy work thirty-three percent when Massenburg was one defendant of three.[3] According to Plaintiff's counsel's accounting, the attorneys spent 5.7 hours and the paralegal spent 5.5 hours working post-September 18, 2012. Multiplied by the hourly rates equals $2,315.00. Reducing the

---

[3] Plaintiff brought only a claim of an ERISA violation against Defendant Group Health Plan. That claim was dismissed on February 15, 2013.

fees by the percentages described above comes to $1,543.33.  Add that to work done before September 18, 2012 results in a sum total of $38,315.83.  Accordingly, Plaintiff's counsel will be approved for $38,315.83 in attorney's fees.

A separate order will be entered.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge